UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA,

        *Plaintiff,*

    *v.*                                           Case No. 21-cr-28

JAMES BEEKS,

        *Defendant.*

---

**JAMES BEEKS'S SUPPLEMENTAL BRIEF IN SUPPORT OF
THE MOTIONS TO DISMISS COUNTS ONE AND TWO
OF THE SIXTH SUPERSEDING INDICTMENT**

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

James Beeks was indicted on allegations that he, *inter alia*, conspired to and did violate 18 U.S.C. § 1512(c)(2) by participating in the January 6th riot. Specifically, Counts One and Two of the Sixth Superseding Indictment allege he agreed to and did obstruct certification of the Electoral College vote by forming part of the "Stack" formation that unlawfully entered the Capitol.

But even if those allegations were true, § 1512(c)(2) can't be read to criminalize that conduct and still accord with the Due Process Clause. As the co-defendants' motions show, canons of statutory interpretation and guiding precedents support reading § 1512(c)(2) in light of its surrounding provisions. And broadly construing the statute to encompass *any* form of obstruction, impediment, or influence of a Congressional proceeding (as the Government urges) would run afoul of the Fifth Amendment's promise of fair notice and protection against arbitrary enforcement of the law. Beeks joined in those motions and writes to supplement with just one point: the Court can sidestep constitutional quicksand by invoking principles of constitutional avoidance and construing § 1512(c)(2) to reach only its core conduct—acts that affect the integrity and availability of evidence used in an official proceeding.

1. The presumption of constitutionality and the constitutional-doubt canon allow the judiciary to uphold ambiguous legislation. The former "holds that courts should, if possible, interpret ambiguous statutes to avoid rendering them unconstitutional" and the latter "militates against not only those interpretations that would render the statute unconstitutional but also those that would even raise serious questions of constitutionality." *United States v. Davis*, 139 S. Ct. 2319, 2332 & n.6 (2019); Antonin Scalia & Bryan A. Garner, Reading Law 247–48 (2012). These principles of constitutional avoidance aren't hypothetical gadgets in the statutory-construction tool belt; they are well worn and regularly employed when courts are faced with statutes like § 1512(c)(2) that could be read to have unlimited reach. A few illustrations are helpful:

Federal Defender Services
of Wisconsin, Inc.

a. For example, in *Skilling v. United States*, the Supreme Court avoided giving 18 U.S.C. § 1346 unconstitutional breadth by looking to the core category of cases within the honest-services doctrine and then limiting the statute's reach to just those "core" cases—bribery and kickback schemes. 561 U.S. 358, 407–08 (2010). The Court explained that "[r]eading the statute to proscribe a wider range of offensive conduct . . . would raise the due process concerns underlying the vagueness doctrine," and courts must "avoid constitutional difficulties by adopting a limiting interpretation if such a construction is fairly possible." *Id*. at 406, 408 (cleaned up).

b. Similarly, in *McDonnell v. United States*, the Court declined to read "official act" in 18 U.S.C. § 201 to reach "nearly any activity by a public official," because that would result in a "standardless sweep" where "public officials could be subject to prosecution, without fair notice, for the most prosaic interactions." 136 S. Ct. 2355, 2367, 2373 (2016) (internal quotation marks omitted). Instead, to avoid a "vagueness shoal," the Court constrained "official act" to "decisions or actions" that involve "specific and focused" kinds of formal exercises of power. *Id.* at 2371–72.

c. The same principles were in play in *Marinello v. United States*, 138 S. Ct. 1101 (2018). There, the Supreme Court declined to read 26 U.S.C. § 7212(a)'s catchall clause ("corruptly . . . obstructs or impedes . . . the due administration of [the Internal Revenue Code]") to reach every task in which an IRS agent engages, even though a literal reading of the statute would have allowed it. 138 S. Ct. at 1108–10. To provide fair notice, § 7212(a) had to be limited to only certain administrative proceedings (excluding "routine, day-to-day work"). *Id.* This wasn't a matter of "inserting an extratextual gloss" on the statute. *Cf.* R.437:16. Rather, by restricting the scope of § 7212(a), the Court chose to "construe, not condemn, Congress' enactment"—just as it had done with § 1346 and § 201. *See Skilling*, 561 U.S. at 403; *McDonnell*, 136 S. Ct. at 2375.

2. As other co-defendants have argued, Section 1512(c)(2) is ambiguous. *See, e.g.*, R.465:4.

It reasonably could be read as being *in pari materia* with § 1512(c)(1) and limited to other acts against tangible evidence, given (c)(1)'s reference to "a record, document, or other object." *See* R.453:2–5; *see also Begay v. United States*, 553 U.S. 137, 142 (2008) (reading "otherwise involves" in § 924(e)(2)(B)(ii) to apply only to "similar crimes, rather than every crime"), *abrogated on other grounds by United States v. Johnson*, 576 U.S 591 (2015). Alternatively, given its title ("Tampering with a witness, victim, or an informant"), it might reach acts affecting tangible *and* intangible evidence (e.g., testimony). *See* R.288:8–9; R.455:2 (arguing that § 1512(c)(2) includes only conduct that "affects the integrity or availability of any kind of evidence"). Or, as the Government would have it, the statute could be read literally and reach *any* act that obstructs, influences, or impedes an official proceeding. R.313:14–15, 24; R.437:3–12.

Employing the Government's approach creates fair notice problems. *See, e.g.*, R.288:11–14; R.454:6–7; R.465:7. The Government has argued that "otherwise obstructs" itself puts any reader "on fair notice . . . that one could obstruct an official proceeding in ways other than with respect to a record, document, or object." R.313:24. And Judge Friedrich recently agreed, holding that the clause isn't vague as applied because "there is little question" that assaultive acts against police are "obstructive." *United States v. Sandlin*, 2021 WL 5865006, at *9 (D.D.C. Dec. 10, 2021). But knowing, generally, that some *other* conduct can trigger liability doesn't provide "fair notice" of *what* conduct is prohibited—and that's what the Fifth Amendment requires. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983) ("a penal statute [must] define the criminal offense *with sufficient definiteness* that ordinary people can understand what conduct is prohibited" (emphasis added)). And while assaulting an officer at the Capitol might intuitively seem obstructive, on closer inspection, it's not so obvious. How physically close does the officer have to be to the proceeding for an assault against him to trigger § 1512(c)(2) liability—the Chambers

3

door; the Capitol's exterior door; the sidewalk? Would tripping him qualify? Just distracting him?

3.  By applying principles of constitutional avoidance, the Court can set aside the constitutional quandary that the Government's interpretation invites and read the statute to reach just its core conduct. Pared down to its core, § 1512(c)(2) reaches acts of obstruction, influence, or impediment, not covered by (c)(1), that affect the integrity or availability of evidence to be used in an official proceeding. That reading is consistent with the statute's text, structure, history, and cases applying it. *See* R.455:14–16, 22 (discussing statute's structure and grammar); R.437:9–10 (discussing statute's history); R.455:6 & n.2 (collecting and summarizing cases); *see also United States v. Ring*, 628 F. Supp. 2d 195, 225 (D.D.C. 2009) (collecting cases and finding presentation of false evidence to grand jury to be in the heartland of § 1512(c)(2) cases). Even the Government acknowledges that conduct to be the "bare minimum" it covers. *Compare* R.437:28 ("At a bare minimum, Section 1512(c)(2) covers conduct that prevents the examination of documents, records, and other nontestimonial evidence in connection with an official proceeding."), *with Skilling*, 561 U.S. at 408 (§ 1346 covers "at least" bribery and kickbacks and is limited to those cases).[1]

Despite the Government's insistence (R.437:4–5), Congress's choice of broad language in § 1512(c)(2) doesn't dictate the result here. Even if Congress doesn't intend to enact unconstitutional legislation, in reality, "[t]he modern Congress sails close to the wind all the time"; and the constitutional-doubt canon allows the judiciary to avoid "interpreting ambiguous statutes to flirt with constitutionality, thereby minimizing judicial conflicts with the legislature." SCALIA & GARNER at 248–49. Given the choice between reading § 1512(c)(2) to reach any and all acts of

---

[1] Even if some cases fall outside that heartland, it doesn't change the calculus. As the Supreme Court has recognized, the fact that there is "considerable disarray" over a statute's application doesn't preclude the judiciary from identifying the "core" of what Congress intended to penalize. *See Skilling*, 561 U.S. at 405, 407 (there was "considerable disarray over the [honest services] statute's application to conduct outside th[e] core category" of kickback and bribery cases but that disarray didn't "cloud the doctrine's solid core").

4

obstruction, influence, or impediment to an official proceeding, or reading the statute to criminalize only those acts at its core, this Court should choose the latter.

To be clear, a pared-down reading of § 1512(c)(2) does not leave the Government without tools to prosecute those who interfere with Congressional proceedings. Section 1512(c)(2) itself still has plenty of bite in proceedings in which Congress receives evidence (e.g., investigations, hearings, impeachments). *See, e.g.*, *McDonnell*, 136 S. Ct. at 2375 ("A more limited interpretation of the term 'official act' leaves ample room for prosecuting corruption[.]"). And there are (many) other charges that the Government can bring (and has brought) against these and other Capitol-breach defendants. Plus, of course, Congress can write another law if it decides § 1512(c)(2) has proven too narrow. But "[r]espect for due process and the separation of powers suggests a court may not, in order to save Congress th[at] trouble, . . . construe a criminal statute to penalize conduct it does not clearly proscribe." *Davis*, 139 S. Ct. at 2333.

4. The allegations against Beeks fall outside the ambit of that core conduct. Allegations of a conspiracy intending "to stop, delay, and hinder" the certification of electoral votes are not allegations that implicate the *integrity or availability of evidence*. R.513 ¶ 38. First, the counting of already-cast electoral votes is not an evidence-taking proceeding. *See* 3 U.S.C. § 15; *see also* R.513 ¶ 4 ("purpose of the Joint Session . . . was to open, count, and resolve any objections to the Electoral College vote . . . and to certify the results[.]"). But even if it were, there is no allegation that the purported co-conspirators agreed to commit any act that would affect the integrity or availability of evidence; instead, the allegations pertain to preparations to rally in DC (*e.g.*, *id.* ¶¶ 56, 58); travel (*e.g.*, *id.* ¶ 84); and the Capitol's breach (*e.g.*, *id.* ¶¶ 141–62); *cf. Sandlin*, 2021 WL 5865006, at *13 (indictment alleged that defendants "encouraged others to steal laptop and paperwork from the Senate Chamber"). Second, relatedly, the factual allegations as to Beeks

5

FEDERAL DEFENDER SERVICES<br>OF WISCONSIN, INC.

are limited to his participation in the "Stack" that breached the Capitol. *See, e.g.*, R.513 ¶¶ 141,

148. Thus, while the allegations against him are serious, they are outside the core of § 1512(c)(2).

      For all the reasons outlined in his co-defendants' motions, as supplemented here, Beeks

submits that the Court must dismiss Counts One and Two of the Sixth Superseding Indictment as

to him.

      Dated at Madison, Wisconsin, this 17th day of December, 2021.

                  Respectfully submitted,

                  */s/ Jessica Arden Ettinger*
                  Jessica Arden Ettinger (D.D.C. Bar No. D00483)
                  FEDERAL DEFENDER SERVICES
                    OF WISCONSIN, INC.
                  22 E. Mifflin Street, Suite 1000
                  Madison, WI 53703
                  Tel.  (608) 260 9900
                  Email:  jessica_ettinger@fd.org

                  */s/ Joshua D. Uller*
                  Joshua D. Uller (WI Bar No. 1055173)
                  FEDERAL DEFENDER SERVICES
                    OF WISCONSIN, INC.
                  517 E. Wisconsin Avenue – Room 182
                  Milwaukee, WI  53202
                  Tel.  (414) 221-9900
                  Email:  joshua_uller@fd.org

                  *Counsel for James Beeks*

6

**CERTIFICATE OF SERVICE**

On this 17th day of December 2021, I filed the foregoing document electronically with the Clerk of the Court for the United States District Court for the District of Columbia by using the Court's CM/ECF system, which will provide electronic service on all counsel of record.

*/s/ Jessica Arden Ettinger*
Jessica Arden Ettinger

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.