**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 21-cr-28-APM-19** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES BEEKS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT JAMES BEEKS'S
MOTIONS TO DISMISS COUNTS FIVE AND SEVEN AND
FOR A BILL OF PARTICULARS**

The government opposes Defendant James Beeks's motion to dismiss counts five (unlawfully entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1)) and seven (interfering with officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3)), ECF No. 638.   Both counts are properly pled in the Seventh Superseding Indictment.

The government also opposes the defendant's motion for a bill of particulars, ECF No. 639.

## PROCEDURAL BACKGROUND

On January 12, 2022, the grand jury returned a Seventh Superseding Indictment (ECF No. 583), charging Defendant Beeks with the following six counts:

- Count one: conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k);

- Count two: obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2), 2;

- Count three: conspiracy to prevent an officer from discharging any duties, in violation of 18 U.S.C. § 372;

1

- Count four: destruction of government property and aiding and abetting, in violation of 18 U.S.C. §§ 1361, 2;

- Count five: entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); and

- Count seven: civil disorder and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3), 2.

This Court has previously denied motions to dismiss the indictment in this case.   *See* ECF Nos. 415, 558, 559, 596.   And the Court has previously denied motions for a bill of particulars. *See* ECF Nos. 182, 415.

## FACTUAL BACKGROUND

The government incorporates the factual background from its earlier omnibus opposition to defendants' motion to dismiss and for a bill of particulars, ECF No. 313.   Relevant here, the Seventh Superseding Indictment, at ¶ 108, charges Defendant Beeks with being in a restricted building or grounds (the United States Capitol), without lawful authority, while Vice President Pence was temporarily visiting.   And, at ¶ 112, the indictment charges Defendant Beeks with obstructing law enforcement officers who were guarding the hallway between the Rotunda and the Senate Chamber, while those officers were engaged in the lawful performance of their duties incident to and during a civil disorder.

## ARGUMENT

### I.    LEGAL STANDARD

A defendant may move to dismiss an indictment or count prior to trial.   *See* Fed. R. Crim. P. 12(b)(3)(B).   A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined without a

trial on the merits." *Id.*   Although a court's supervisory powers provide the authority to dismiss an indictment, "dismissal is granted only in unusual circumstances."   *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015).

An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged.   *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).   The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed.   *Id.*   "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

As the D.C. Circuit explained in *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), "[a]lthough an indictment must – in order to fulfill constitutional requirements – apprise the defendants of the essential elements of the offense with which they are charged, neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed."   *Id.* at 124.   Indeed, "the validity of an indictment 'is not a question of whether it could have been more definite and certain.'"   *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). "While detailed allegations might well have been required under common-law pleading rules, . . . they surely are not contemplated by Rule 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'"   *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007).   As a mere notice

pleading, an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend."   *Id.* at 108; *see Haldeman*, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established.").   Only in the rare case where "guilt depends so crucially upon . . . a specific identification of fact" not included in the statutory language will an indictment that restates the statute's language be insufficient.   *Haldeman*, 559 F.2d at 125 (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)).

The court has discretion to order a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f).   *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006).   "[I]f the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required."   *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987).

## II.    COUNT FIVE (UNLAWFUL ENTRY) IS PROPERLY PLED.

Count five alleges a violation of Section 1752 of Title 18, which prohibits the unlawful entry into a "restricted buildings or grounds."   A "restricted building or grounds" is a "posted, cordoned off, or otherwise restricted area . . . where the President or other person protected by the Secret Service is or will be temporarily visiting."   18 U.S.C. § 1752(c)(1)(B).   At the time the defendant entered the U.S. Capitol on January 6, 2021, the Vice President was present.   The defendant's conduct accordingly falls within the Section 1752's plain sweep because he unlawfully entered a restricted building while the Vice President was "temporarily visiting," as alleged in the indictment.

At the time the defendant filed his motion, Judge Bates had already rejected this precise argument in *United States v. McHugh*, No. 21-cr-453, 2022 WL 296304 (D.D.C. Feb. 1, 2022). Favorably citing *McHugh*, Judges Contreras and Friedman have since done the same.   *See United*

*States v. Andries*, 21-cr-93 (RC), 2022 WL 768684, at *17 (D.D.C. Mar. 14, 2022) ("Vice President Pence was 'temporarily visiting' the Capitol on January 6 within the meaning of § 1752."); *United States v. Puma*, No. 21-cr-454 (PLF), 2022 WL 823079, at *18 (D.D.C. Mar. 19, 2022) ("[B]ecause Vice President Pence was physically present at the U.S. Capitol on January 6, 2021, the U.S. Capitol was automatically designated as a 'restricted building or ground' during the relevant period."). This Court should follow suit.

Contrary to Section 1752's plain terms, purpose, and structure, the defendant argues that Vice President Pence cannot "temporarily visit" the U.S. Capitol because he has an office there. Mot. to Dismiss at 11. He claims that his is the commonsense reading of the statute, but he is wrong. *See McHugh*, 2022 WL 296304, at *21 (reaching "a commonsense conclusion: the Vice President was 'temporarily visiting' the Capitol"). Indeed, in his own motion, the defendant notes that Vice President Pence "*traveled* to the Senate" thirteen times and Vice President Harris "*visited* the Senate" fifteen times. Mot. to Dismiss at 3-4 (emphasis added). That these Vice Presidents *traveled to* and *visited* a place shows the commonsense meaning of the phrase "temporarily visits": a place the person is physically present. As Judge Contreras noted, "though there is some intuitive appeal to Andries's suggestion that a person does not 'visit' a place where he maintains an office, dictionary definitions of the term do not impose such a limitation." *Andries*, 2022 WL 768684, at *16.

To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *United States Levin*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). The verb "visit" means, inter alia, "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come

officially to inspect or oversee." *See* Merriam Webster, *Visit*, at merriam-webster.com/dictionary/visit.

Either definition describes the Secret Service protectee's activities on January 6. Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, starting in the Senate chamber, then in the House chamber (as the joint session began), and then back and forth between the Senate and House chambers until the proceeding concluded with the announcement of the winner of the election. While not specifically alleged in the indictment, two other Secret Service protectees (members of the Vice President's immediate family), also came to the U.S. Capitol that day for a particular purpose: to observe these proceedings. Furthermore, as President of the Senate, Vice President Pence oversaw the vote certification. Given the presence of the Vice President (and his family members), the U.S. Capitol plainly qualified as a building where "[a] person protected by the Secret Service [was] … temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).

The defendant stresses that Vice President Pence had a permanent U.S. Capitol office. Mot. to Dismiss at 13. Section 1752(c)(1)(B), however, defines the restricted area by reference to the location of the protectee—not his office. When Vice President Pence traveled to the U.S. Capitol on January 6 to oversee the Joint Session of Congress, he was "visiting" the building. And because Vice President Pence intended to leave at the close of the session, this visit was "temporar[y]." Vice President Pence (and his family) had traveled to the U.S. Capitol to oversee and attend the Joint Session of Congress—a proceeding of limited duration. At the close of the proceeding, they left—confirming the "temporary" nature of their visit. *See McHugh*, 2022 WL

296304, at *20 (citing various dictionary definitions of "temporary" as "for a limited time" and finding that the Vice President can "temporarily visit" the U.S. Capitol).

Moreover, the U.S. Capitol is not the Vice President's regular workplace; even if "there is some carveout in § 1752 for where a protectee normally lives or works, it does not apply to Vice President Pence's trip to the Capitol on January 6, 2021." *McHugh*, 2022 WL 296304, at *22. And, when properly reading Sections 1752(c)(1)(A) and (B) in tandem, it is apparent that there is no such "carveout": together they encompass the areas where a protectee lives, works, and temporarily visits. In other words, they encompass the locations where the protectee is, or will be, physically present.

Such an alleged "carveout," taken to its logical end, would undermine the government's ability to protect the President and Vice President by deterring and punishing individuals who seek unauthorized access to the President's or Vice President's location. Under the defendant's construction, Section 1752(c)(1)(B) would not apply where President Biden temporarily stayed at his permanent residence in Delaware—on the view that such a trip would not qualify as "visiting." Nor would it apply to Camp David, where there is a presidential cabin and office. In another strange scenario, a restricted area could exist when, as here, the Vice President's family visits the Capitol (because they are Secret Service protectees without an office there), but not when the Vice President does, affording a higher level of protection for the family of the elected official than to the elected official himself. It is illogical to suggest that a Vice President can "temporarily visit" an airplane hangar or a park, but not the Capitol, Mot. to Dismiss at 14-15, especially because Section 1752(c)(1) applies to all Secret Service protectees. No support exists for the defendant's effort to insert such large and irrational exceptions into the statute's sweep. *See Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020) (noting that courts will avoid a "statutory outcome … if it

7

defies rationality by rendering a statute nonsensical or superfluous or if it creates an outcome so contrary to perceived social values that Congress could not have intended it") (citation omitted).

The defendant's position also defies Section 1752's clear purpose. *Cf. Genus Med. Techs. LLC v. United States Food & Drug Admin.*, 994 F.3d 631, 637 (D.C. Cir. 2021) ("[I]f the text alone is insufficient to end the inquiry, we may turn to other customary statutory interpretation tools, including structure, purpose, and legislative history.") (internal quotation marks and citation omitted). In drafting Section 1752, Congress sought to protect "not merely the safety of one man, but also the ability of the executive branch to function in an orderly fashion and the capacity of the United States to respond to threats and crises affecting the entire free world." *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016) (quoting *White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1528 (D.C. Cir. 1984)). To that end, the statute comprehensively deters and punishes individuals who seek unauthorized access to the White House grounds and the Vice President's residence—fixed locations where the President and Vice President live and work, 18 U.S.C. § 1752(c)(1)(A); and also any other "building or grounds" where they (or other protectees) happen to be "temporarily visiting," *id.* § 1752(c)(1)(B). Reading Sections 1752(c)(1)(A) and 1752(c)(1)(B) together protects the President and Vice President in their official homes and wherever else they go. See *Puma*, 2022 WL 823079, at *18 ("The legislative history of the statute's amendments confirms that the statute's protections encompass places of work and other locations where a protectee may conduct business.").

The defendant's argument sets up a straw man—that Vice President Pence's trip to his own office in the West Wing of the White House would not qualify as "temporarily visiting" under Section 1752(c)(1)(B). Mot. to Dismiss at 18. But it need not. The Vice President's official office is protected under Section 1752(c)(1)(A), regardless of whether he is present. The point of

8

Section 1752(c)(1)(B) is to protect the Vice President when he is in an area *other than* the White House or his residence—the two places he would normally be found, contrasted with all other places, where he would be *temporarily visiting*.

Interpreting the statute as the defendant suggests would create a gap in Section 1752's coverage by removing areas, such as the U.S. Capitol, from protection.   It could expose the leaders of the Executive Branch even as they perform their official duties.   That gap is both illogical and contrary to the statutory history of Section 1752, where, "at every turn," Congress has "*broadened* the scope of the statute and the potential for liability."   *United States v. Griffin*, 549 F. Supp. 3d 49, 56 (D.D.C. 2021) (emphasis in original).

Count five states an offense: that the defendant violated Section 1752(a)(1) by being inside the Capitol while the Vice President was there.[1]   The Court should deny the motion to dismiss.

## III.    COUNT SEVEN (CIVIL DISORDER) IS PROPERLY PLED

Defendant Beeks complains that the indictment does not "factual[ly] alleg[e]" that the that the "'civil disorder' had a relationship to commerce or a 'federally protected function.'"   Mot. to Dismiss at 21.   But it does: Paragraph 112 plainly alleges that the civil disorder "in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function."

---

[1]  The Court need not engage with the defendant's arguments about the rule of lenity or constitutional avoidance.  Mot. to Dismiss at 17.   The statute is not vague, let alone grievously so.  *See United States v. Caldwell*, 21-cr-28 (APM) 2021 WL 6062718, at *21 (D.D.C. Dec. 20, 2021) ("[A] court may resort to the rule of lenity only if 'after seizing everything from which aid can be derived' there still remains 'grievous ambiguity or uncertainty.'") (quoting *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998)).

*Cf.* Mot. to Dismiss at 7 (conceding that "[i]n charging a violation of § 231(a)(3), the indictment largely parrots the statute").

His complaint appears to be that the indictment does not allege *how* the civil disorder affected commerce or a federally protected function.  But that is a complaint about proof, not pleading.   At the Rule 12 stage, the Court looks only to the sufficiency of the allegation; whether the government can muster facts to prove that count is a question for the jury.  *See United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009) (denying motion to dismiss that "conflates pleading with proof") (internal citation and quotation marks omitted).

As this Court previously explained in the course of denying a motion to dismiss a prior iteration of the indictment in this case, "[t]he D.C. Circuit has emphasized that 'by using the statutory language and specifying the time and place of the offense,' an indictment usually gives 'the defendant fair notice of the charge against which he would need to defend himself, and also enable[s] him to protect himself against future prosecution for the same offense.'"  Sept. 14, 2021, Order (ECF No. 415), at 6 (quoting *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018)).   Defendant Beeks is simply wrong to contend that an "indictment's parroting of the statutory language," Mot. to Dismiss at 22, somehow renders the indictment insufficient.  *See* Sept. 14, 2021, Order at 6 (denying motion to dismiss counts that "track[]" and "parrot" the language of the statutes and identify the time and place of the offenses).

The defendant cites *United States v. Conlon*, 628 F.2d 150 (D.C. Cir. 1980), and *Russell v. United States*, 369 U.S. 749 (1962), for the proposition that an indictment's parroting of the statutory language is insufficient to provide notice.   Neither case stands for that proposition.   In *Conlon*, while the D.C. Circuit noted that the "government could have been more specific in the indictment," it nonetheless reversed the district court's dismissal order, holding that the indictment

10

was indeed sufficient to give the defendant notice of the offense.   628 F.2d at 156.   "There is a difference, of course, between failing to state an element of the offense and being less specific than one could be in spelling out the acts that constitute the offense."   *Id.* at 156 n.33.   And in *Russell*, where the defendant was charged under a statute that makes it a crime for a witness called before a congressional committee to refuse to answer any question "pertinent to the question under inquiry," 2 U.S.C. § 192, the indictment's failure to identify the subject of the congressional hearing rendered it insufficient because "guilt" under that statute "depend[ed] so crucially upon such a specific identification of fact."   369 U.S. at 764.   That feature is not present here because guilt under Section 231(a)(3)—or under any of the other charges that the defendant here faces— does not depend on any such "specific identification of fact."   *See Resendiz-Ponce*, 549 U.S. at 110 (not applying *Russell* to the illegal re-entry statute at issue in that case because guilt did not turn upon "a specific identification of fact"); *Williamson*, 903 F.3d at 131 (not applying *Russell* to statute criminalizing threats against federal officers); *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 n.17, 154-56 (D.D.C. 2017) (not applying *Russell* to statute criminalizing use of firearms in connection with drug trafficking crimes).

Indeed, Courts in this District have upheld the sufficiency of indictments far less specific than the one here.   For example, in *Apodaca*, the defendants were charged with offenses under 18 U.S.C. § 924(c).   The indictment provided only "general detail as to the places where the offenses were committed: namely, Mexico and the United States."   275 F. Supp. 3d at 154.   As to the "when" of the offenses, the indictment alleged that the offenses had occurred over a two- and nine-year period.   *Id.*   Finally, the indictment "d[id] not specify a particular weapon that was possessed," or "specify whether the firearms were 'used, carried or brandished'" under the statute. *Id.*   Nonetheless, the indictment was sufficient.   *Id.* at 153-54.

Here, the defendant's "complaint seems to result . . . from a general misunderstanding of the purpose of the indictment and, especially, from an inflated notion of what must be included therein." *Haldeman*, 559 F.2d at 124.   As the D.C. Circuit concisely explained in rejecting an identical argument in *Verrusio*:

> Verrusio contends that Count Two of the indictment failed to allege an official act because it failed to say "how Mr. Verrusio was going to use his position" to help United Rentals . . . . The indictment certainly need not allege precisely how Verrusio contemplated [committing the crime].   Would he do it by himself or ask someone else to do it?   Would that someone else be Colonel Mustard or Professor Plum?   With a candlestick or a rope, in the library or the study?   Answering those questions is not required at the indictment stage.

762 F.3d at 14-15.   Similarly, in *United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018), the court affirmed the denial of a motion to dismiss a count charging the defendant with making a threat against a federal law enforcement officer "with intent to retaliate against such . . . officer on account of the performance of official duties."   The D.C. Circuit explained that the indictment was sufficient because it parroted the statutory language that the "threat [be] made 'on account of the performance of official duties,'" without having to specify or further describe those official duties, because the particular "official duties" were not "central to every prosecution" or "the very core of criminality."   *Id.* (quoting *Russell*, 369 U.S. at 764).

The defendant relies on *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. 2017), to argue that the superseding indictment is deficient.   But the challenged indictment in *Hillie* only broadly stated the date of the offenses as "periods of time that span two to three years," the location of the offenses as "the District of Columbia," and was "devoid of any facts regarding the circumstances of Hillie's behavior" that led to the charges.   *Id.* at 71-72.   Indeed, the court in *Hillie* found it especially problematic that the government charged violations of the same statute in overlapping, multi-year periods, such that "one cannot tell whether the charges relate to distinguishable or

separate offenses . . . and, indeed, it is not clear that these counts even reference *different* acts on

the Defendant's part." *Id.* at 73.   Here, there is no such problem: the indictment specifies what

Defendant Beeks is alleged to have done (joining a mob in pushing against a line of police officers),

where he is alleged to have done it (not just inside the District of Columbia or even the United

States Capitol building generally, but inside a particular hallway within that building), and when

he is alleged to have done it (not just the specific date of January 6, 2021, but at the specific time

of approximately 2:45 p.m.).   *See Resendiz-Ponce*, 549 U.S. at 108 (2007) (upholding sufficiency

of indictment that echoed statute while specifying time and place of the offense and identity of the

threatened officer); *Williamson*, 903 F.3d at 131 (same).   The defendant is in no way uncertain

about what conduct "allegedly constitut[es] the offense."   *Hillie*, 2127 F. Supp. 3d at 76.   And he

is in no way unable to prepare a defense or invoke double jeopardy if he were prosecuted again for

the same conduct.

The defendant's citation to *United States v. Howard*, No. 21-cr-28, 2021 WL 4342134

(E.D. Wis. June 3, 2021), is similarly unavailing.   In *Howard*, the magistrate judge recommended

dismissing the civil disorder count because it did not allege the specific act that Howard took or

where that act occurred.   *Id.* at *6.   The judge in *Howard* did not fault the indictment for failing

to allege how commerce or a federally protected function were affected, *see id.*, and for good

reason:   parroting the language of the statute gives the defendant all the notice he needs to defend

against those elements of the charge.

The court in *United States v. Phomma*, No. 3:20-cr-00465-JO, 2021 WL 4199961, at *7

(D. Or. Sept. 15, 2021), recently denied a similar motion to dismiss an indictment charging a

violation of 18 U.S.C. § 231(a)(3).   After reciting the familiar standard that an indictment is

sufficient if it "fully, directly, and expressly, without any uncertainty or ambiguity, set[s] forth all

13

the elements necessary to constitute the offence intended to be punished," the court held that that indictment's "track[ing] the wording of the statute" was sufficient to "allege the elements of a civil disorder violation." *Id.* (quoting *Hamling*, 418 U.S. at 117). Indeed, as the court noted, "bare-bones" charging instruments, which merely recite the statutory language, are "common" and "entirely permissible" in such circumstances. *Id.* (citing *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995)). And the speaking indictment in this case contains far more details than a "bare-bones" charging instrument.

Fundamentally, Defendant Beeks complains that the indictment does not describe how the civil disorder adversely affected commerce or a federally protected function. But he concedes that the indictment adequately alleges his own conduct. Such an allegation is all that is required.

The defendant complains that he is not aware of the law enforcement officers who were guarding the hallway. Mot. to Dismiss at 23-24. But, as noted above, there is no requirement that their names or titles be pled in the indictment. In addition, the government produced in discovery bodyworn camera video files from the Metropolitan Police Department (MPD) officers who were in that hallway. Those files show the names of the officers and that they were employed by MPD.

Though obviously not required to be pled in the indictment, the government does not shy away from explaining the theories under which it intends to prove that the civil disorder adversely affected a federally protected function. Congress defined "federally protected function" as "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof." 18 U.S.C. § 232(3). There are two federally protected functions that the government intends to prove in this case: one, the United States Capitol Police's protection of the United States Capitol building and

14

grounds, and two, the United States Secret Service's protection of the Vice President and his family.   As alleged in the indictment, the government *also* intends to prove that the civil disorder adversely affected both commerce and the movement of an article or commodity in commerce. The government may do so with evidence about how the civil disorder at the Capitol led the District of Columbia mayor to impose a curfew on the afternoon of January 6, 2021, which led to stores closing early throughout the District and therefore both losing out on business and being unable to receive scheduled out-of-state shipments.   *Cf. Haldeman*, 559 F.2d at 124 (an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed").

At bottom, an indictment must be specific enough to provide both notice and adequate protection for a defendant's double jeopardy rights.   This indictment is: it alleges that Defendant Beeks, on January 6, 2021, at approximately 2:45 p.m., obstructed the law enforcement officers guarding the hallway between the Capitol Rotunda and Senate Chamber by joining a mob that pushed against the line of law enforcement officers.   Indictment at ¶ 96, 112.   This allegation gives the defendant notice of the charge against him and protects his rights to not be charged again for the same conduct.

The Court should not dismiss count seven.

## IV.    THE DEFENDANT IS NOT ENTITLED TO A BILL OF PARTICULARS

The defendant contends that the government ought to provide a bill of particulars naming (1) each alleged principal whom he aided and abetted and (2) each alleged co-conspirator.    Mot. for Bill at 2.    No such bill of particulars is required.

At trial, the government need not prove the names or identities of principals.    *See United States v. Kegler*, 724 F.2d 190, 201 (D.C. Cir. 1983) ("An aider and abettor of a crime may be tried

and convicted even though the principal is not tried, convicted or identified.").[2]    There is

therefore no need for the government to provide that information to the defense in a bill of

particulars.    *See United States v. Palfrey*, 499 F. Supp. 2d 34, 51-52 (D.D.C. 2007) ("[T]here is

no basis for disclosure of particulars that need not be proven at trial.").

This issue is governed by the D.C. Circuit's opinion in *United States v. North*, 910 F.2d

843, 913 (D.C. Cir. 1990) (per curiam),[3]  in which it rejected the defendant's contention that the

district court had erred by denying the defendant's motion for a bill of particulars identifying the

alleged principals whom he aided and abetted.    The appellate court noted that it had "long rejected

the proposition that the principal must be specifically identified in order for the conviction of the

aider and abettor to stand," and that it saw no reason why the same rule would not apply at the

pleading stage.    *Id.*    As this Court previously ruled in connection with former co-defendant

Joshua James's motion for a bill of particulars regarding the grand jury proceeding he allegedly

obstructed, "the level of detail that James seeks is simply not 'necessary.'"    Sept. 14, 2021, Order

(ECF No. 415), at 9.    "As it appears that the government will not have to prove at trial that James

knew he was deleting Signal chats to obstruct a specific grand jury investigation, a bill of

particulars specifying the granular detail he seeks is not warranted."    *Id.* at 10.    The same holds

---

[2] *See also United States v. Perry*, 643 F.2d 38, 45 (2d Cir. 1981) ("To show a violation of 18 U.S.C. § 2 it is not necessary to identify any principal at all, provided the proof shows that the underlying crime was committed by someone."); *United States v. Clark*, 980 F.2d 1143, 1146 (8th Cir. 1992) ("To obtain a conviction for aiding and abetting, the government need not prove the actual identity of the principal, provided the evidence shows that the underlying crime was committed by someone.") (citing *United States v. Horton*, 921 F.2d 540, 543 (4th Cir. 1990)); Model Criminal Jury Instructions for the District of Columbia § 3.200 ("It is not necessary that all the people who committed the crime be caught or identified.    It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted in committing the crime.").

[3] A portion of the opinion, on different issues, was withdrawn and superseded on rehearing, as reported at 920 F.2d 940 (D.C. Cir. 1990).

true here: if, at trial, the government need not prove that fact, then government, at the pleading stage, need not particularize that fact.

With respect to the names of alleged coconspirators, the government agrees that, in advance of trial, it will provide the defendant with a list of coconspirator statements in furtherance of the conspiracy that the government will seek to introduce at trial. *Cf.* Fed. R. Evid. 801(d)(2)(E). The defendant may then object to the introduction of a statement on the basis that the declarant was not a member of the conspiracy or that the statement was not made in furtherance of the conspiracy. *See United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980) (holding that a trial judge "shall rule on the admissibility of a co-conspirator's hearsay declarations"); *see also United States v. White*, 116 F.3d 903, 915 (D.C. Cir. 1997) ("[C]ourts routinely admit hearsay statements of co-conspirators subject to connection through proof of a conspiracy.").

But it is not efficient or necessary to require the government to provide, at this stage, a list of each and every person whom the government alleges joined the conspiracy at some point. Moreover, for the following three reasons, the defense already possesses much of this information from discovery. *Cf.* Sept. 14, 2021, Order (ECF No. 415), at 8 (noting that "a bill of particulars is not required" "if the requested information is available in some other form") (quoting *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987)); *United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 179 (D.D.C. 2015) (denying motion for bill of particulars because, in part, the government had already provided extensive discovery).

*First*, government has already listed for the defense the name of each person identified with a "Person" number in the indictment (and in prior iterations of the indictment).

*Second*, the government has already provided the defense with civilian-witness *Jencks* materials, consisting of many FBI memoranda of interviews and grand jury transcripts, among

other materials.   These materials apply to more than 150 witnesses and are neatly organized in a spreadsheet with a short description of each witness's role.

*Third*, the government has already identified for the defense the approximately fifteen Signal threads that the government believes contain some of the "key planning and coordination" communications within the conspiracy.

The materials listed above provide the defense with the names (and statements) of many of the witnesses the government may call at trial, many of whom the government may allege to be coconspirators with Defendant Beeks.   That is all the information to which the defense is entitled.

The defendant's motion cites *United States v. Barrentine*, 591 F.2d 1069, 1077 (5th Cir. 1979), for the proposition that "[a] bill of particulars is a proper procedure for discovering the names of unindicted coconspirators who the government plans to use as witnesses."   Mot. for Bill at 10.   The government commits that, in advance of trial, it will provide the defense with the names of witnesses – whether unindicted coconspirators or not – whom the government plans to call as witnesses at trial.   But ordering a disclosure of the name of every alleged coconspirator at this stage is not warranted.

The defendant's motion for a bill of particulars should therefore be denied.

**WHEREFORE**, the United States respectfully requests that this Court deny Defendant Beeks's motions to dismiss and for a bill of particulars.

18

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:    _____/s/_____

Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Ahmed M. Baset
Troy A. Edwards, Jr.
Louis Manzo
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530

_____/s/_____

Justin Sher
Alexandra Hughes
Trial Attorneys
National Security Division,
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20004